[S. F. No. 21009. In Bank. Oct. 4, 1962.]

ANDREW BODISCO, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Andrew Bodisco, in pro. per., and Archibald M. Mull, Jr., for Petitioner.

Garrett H. Elmore for Respondent.

THE COURT.—Petitioner, Andrew Bodisco, seeks a review of the recommendation of the Board of Governors of the State Bar that he be disbarred. Four members of the board voted against the recommendation on the ground that the discipline was too severe.

Mr. and Mrs. Charles Martin employed petitioner in July 1958 to bring an action against Safeway Stores, Inc., for personal injuries sustained by Mrs. Martin. In March 1959 petitioner orally negotiated a settlement agreement for $2,250 with Safeway's attorney. Petitioner testified to the effect that before entering into the agreement he discussed the settlement with the Martins and that they said, ''Andy, if that's the most you can get, $2250, . . . we don't like it but if that's the most you can get I guess we'll have to take it. Go ahead.'' The Martins testified that they discussed the possibility of a settlement with him but that they did not authorize him to settle for $2,250.

The Martins' daughter later wrote to petitioner stating in effect that she would not permit her parents to settle for less than $10,000. Her letter was not received by petitioner until a few days after the oral settlement agreement was entered into. Petitioner talked with one of the Martins, who told him that because of their daughter's views he should arrange a better settlement for them, and he replied that if it were necessary for him to do better he would see if he could.

After receiving the daughter's letter petitioner signed the Martins' names, without their consent, to a release which he

had received from Safeway about the same time as the letter. He also had a legal secretary sign the document as a witness and notarize it. He returned the release to Safeway, and the action was dismissed with prejudice. A check for $2,250 payable to him and the Martins was sent to him, and he endorsed their names on the check without their consent.

Petitioner cashed the check, deposited $600 of the proceeds in an account designated "Bodisco, Andrew, Special," placed $1,400 in a commercial account in the names of "Andrew and Karen Bodisco," and retained the remaining $250 for his own use. The balances in the two accounts were later reduced until they totaled less than $1,500, the approximate amount to which the Martins would have been entitled under their contingent fee contract with petitioner if the settlement were valid. There was uncontradicted evidence that petitioner always had sufficient assets to meet a demand by the Martins for their share of the settlement.

Petitioner continued to urge the Martins to settle for an amount between $2,000 and $3,000. He represented to them that he was still negotiating with Safeway, and he did not tell them that he had received the money from Safeway until after they learned what had happened from another attorney they employed. They brought an action against him which was settled by the payment of $4,000. They thus obtained the full amount paid by Safeway, without any deduction for attorney's fees or costs advanced by petitioner, plus an additional $1,750.

Charges of unprofessional conduct on the part of an attorney should be sustained by convincing proof and to a reasonable certainty, and any reasonable doubts should be resolved in favor of the accused. (*Black* v. *State Bar*, 57 Cal. 2d 219, 222 [18 Cal.Rptr. 518, 368 P.2d 118].) The findings of the Board of Governors are, of course, not binding on the Supreme Court, which will weigh the evidence and pass upon its sufficiency. (*Rock* v. *State Bar*, 57 Cal.2d 639, 642 [21 Cal.Rptr. 572, 371 P.2d 308].)

We are of the view that it was not established to a reasonable certainty that petitioner lacked authority to enter into the oral settlement agreement. The evidence, however, shows that when petitioner signed the Martins' names to the release he knew that he did not then have the authority to settle for $2,250.

There is no doubt that petitioner was guilty of serious misconduct which cannot be condoned. The record discloses some

mitigating circumstances, however. There was evidence indicating that the settlement was fair and reasonable. Petitioner's misconduct was apparently motivated by his determination to abide by the oral settlement that he understood he had authority to make, and ultimately to obtain his clients' approval of the settlement and not to undermine their interests. He made complete restitution to them and frankly disclosed his actions to the local committee and the board. Petitioner testified that he was very nervous at the time of the events in question due to serious illness in his family. It appears that his father, who died in February 1961, was paralyzed for 17 years, and his mother's mental condition was not good. He supported his parents in addition to four other dependents and was periodically involved in financial difficulties. Petitioner, who is about 50 years old, was admitted to the State Bar in 1938 and has not been previously disciplined except for a public reprimand in 1955 for solicitation of professional employment.

Under all the circumstances, we are of the opinion that disbarment is too severe a discipline to be imposed.

It is ordered that petitioner be suspended from the practice of law for a period of two years, commencing 30 days after the filing of this order.