[L. A. No. 28808. In Bank. July 11, 1966.]

In re HARRY ALKOW on Suspension of License.

Harry Alkow, in pro. per., for Petitioner.

F. LaMar Forshee for Respondent.

THE COURT. — Harry Alkow, a 60-year-old attorney admitted to practice in 1927, was convicted in 1964 of manslaughter in the driving of a vehicle. (Pen. Code, § 192, subd. 3 (b).)[1] He was placed on probation for three years upon specified conditions including, among others, that he serve 11 months in jail subject to the provisions of Penal Code section 1208, then known as the Work Furlough Rehabilitation Law, and that during the 11 months he practice law only at the office of a named attorney and make only "routine court appearances, no trials, no motions." He did not appeal.

We referred the matter to the State Bar for a report as to whether the circumstances surrounding the offense involved moral turpitude and, if so found, for a recommendation as to discipline. The Board of Governors determined that moral turpitude was involved and recommends that Alkow be suspended for six months.[2] The local committee was of the view that Alkow's conduct was extremely reprehensible and not of the standards required of members of the State Bar but that his conduct did not involve moral turpitude.

The findings of the board may be summarized as follows:

After his driver's license expired in 1961 Alkow made one attempt to secure another license, but it was refused on the ground that he had defective vision.

From the time his license expired until he committed the manslaughter he was convicted of more than 20 traffic violations, at least 11 of which were for driving without a license. On December 5, 1963, he pleaded guilty to a violation of right of way and driving without a license, and on Decem-

---

[1]Penal Code section 192 provides: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds: . . . 3. In the driving of a vehicle— . . . (b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence."

[2]Two members voted "No" to the determination of moral turpitude; three voted "No" to the recommendation regarding discipline; two of the three thought the recommended discipline insufficient.

ber 6, 1963, he pleaded guilty to driving without a license and without evidence of registration. He was placed on probation for one year in each action upon the condition that he not violate any laws. On January 16, 1964, he pleaded guilty to a failure to observe a boulevard stop and driving without a license and was placed on probation for one year upon the condition that he not violate any laws and upon the further specific condition that he not drive without a license.

About 6 p.m. on February 15, 1964, while driving without a license in violation of the terms of his probation and the law, he struck and killed a woman pedestrian in Santa Ana. His defective vision was one proximate cause of the accident. Although he did not intend the accident, he knew his vision was defective and reasonably must have known that injury to others was a possible if not a probable result of his driving.

The pedestrian's death led to Alkow's conviction for the offense here involved. [He was also found to be in violation of the terms of his probation and was sentenced to 30 days in jail in each action, the sentences to run concurrently with that imposed for the manslaughter.]

As we have seen, the board further found that the circumstances surrounding the manslaughter involved moral turpitude.

 It is well established that the findings of the board must be given great weight, although they are not binding upon this court (*Grove* v. *State Bar,* 63 Cal.2d 312, 315 [46 Cal.Rptr. 513, 405 P.2d 553]; *Werner* v. *State Bar,* 24 Cal.2d 611, 623 [150 P.2d 892]) and that the burden is upon the petitioner seeking a review of the board's recommendation to show that the findings are not supported by the evidence or that the recommendation is erroneous (*In re Clark,* 63 Cal.2d 610, 612 [47 Cal.Rptr. 681, 407 P.2d 993]; *In re Hallinan,* 48 Cal.2d 52, 53 [307 P.2d 1]).

 Alkow states that he "makes his objections to every one of the findings . . . as they are not supported by convincing evidence," but a general allegation of this type is insufficient to sustain his burden (*Hyland* v *State Bar,* 59 Cal.2d 765, 767 [31 Cal.Rptr. 329, 382 P.2d 369]). Moreover, the record contains ample evidence supporting the board's findings.

 It is clear that the circumstances surrounding the manslaughter involved moral turpitude. Moral turpitude has been defined as "everything done contrary to justice, honesty, modesty, or good morals" (*In re McAllister,* 14 Cal.2d 602,

603 [95 P.2d 932]; *In re Hatch,* 10 Cal.2d 147, 150 [73 P.2d 885]) and as "[a]n act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man" (*In re Boyd,* 48 Cal.2d 69, 70 [307 P.2d 625]; *In re Craig,* 12 Cal.2d 93, 97 [82 P.2d 442]). Alkow's conduct showed a complete disregard for the conditions of his probation, the law, and the safety of the public and involved moral turpitude under the foregoing definitions.

Alkow asserts that error was committed at his manslaughter trial, but in this proceeding the record of conviction is conclusive evidence of his guilt of the crime of which he was convicted (Bus. & Prof. Code, § 6101; *In re Clark, supra,* 63 Cal.2d 610, 613).

Alkow further contends that in view of the condition of his probation that restricted his right to practice for several months he should not now be suspended for six more months. However, suspension for six months is not excessive. In recommending this discipline the board took into consideration a three-year suspension ordered in 1952. (*Alkow* v. *State Bar,* 38 Cal.2d 257 [239 P.2d 871].) The record in that proceeding showed that Alkow had repeatedly committed acts of misconduct including, among other things, misappropriation of clients' funds, misrepresentations to his clients, and the issuance of checks that he knew would not be honored. It also appears that at the hearings before the State Bar in the instant proceeding Alkow was evasive and showed a lack of candor in some of his testimony. Such conduct is inconsistent with the high degree of fidelity to his professional duties owed by an attorney at law. (*Honoroff* v. *State Bar,* 50 Cal.2d 202, 210 [323 P.2d 1003]; *Burns* v. *State Bar,* 45 Cal.2d 296, 303 [288 P.2d 514].)

Additional contentions by Alkow are without merit and need not be discussed.

It is ordered that Harry Alkow be suspended from the practice of law for a period of six months, commencing 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied August 31, 1966.