[No. S008887. Dec. 31, 1990.]

In re ANNA LOU KELLEY on Reproval.

COUNSEL

Starnes & Drapiewski, Daniel Drapiewski and Jennifer A. Becker for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Margaret E. Fourt and Donald R. Steedman for Respondent.

OPINION

**THE COURT.**—In this proceeding we review the recommendation of the Review Department of the State Bar Court that petitioner Anna Lou Kelley be publicly reproved and placed on disciplinary probation for three years on several conditions, including abstinence from the use of intoxicants and referral to the State Bar Program on Alcohol Abuse. Petitioner contends her conduct—a second conviction of driving with a blood-alcohol level exceeding 0.10 percent (Veh. Code, § 23152, former subd. (b)), constituting a violation of conditions of criminal probation imposed for her first offense—does not warrant professional discipline because it is both unrelated to her practice of law and not proscribed by any disciplinary rule or statute. Alternatively, she contends the ground on which the review department recommended discipline is unconstitutionally vague and the recommended discipline is excessive and would violate her constitutional right to privacy.

We conclude that with the exception of the probationary requirement of abstinence from the use of intoxicants, the disciplinary recommendations of the review department should be adopted. Petitioner's repeated criminal conduct calls into question her judgment and fitness to practice law in the

absence of disciplinary conditions designed to prevent recurrence of such conduct. Further, her contention, that the standard under which the review department recommended discipline is impermissibly vague, lacks merit. As applied to her offenses, the standards of professional conduct provide sufficient notice of the possibility of discipline to avoid constitutional infirmity. Finally, public reproval and referral to the State Bar alcohol abuse program are warranted in this case, are sufficient to prevent recurrence of petitioner's conduct, and do not violate petitioner's right to privacy.

## I. FACTS

Petitioner was admitted to the practice of law in California in December 1982. In April 1984, after driving her car into an embankment, she was arrested and charged with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)) and driving with a blood-alcohol level in excess of 0.10 percent (Veh. Code, § 23152, former subd. (b)). She entered a plea of nolo contendere to the latter offense; the former charge was dismissed. The court sentenced her to 48 hours in jail, fined her $750, and placed her on probation for 36 months. Her probation included conditions that she obey all laws and enroll in an alcohol abuse program. She completed the program in November 1984.

In November 1986, during the probationary period for the first offense, petitioner was stopped by a police officer while driving home from a local bar.[1] When the officer asked to see her driver's license, he smelled alcohol and noticed that petitioner's movements were labored. He asked whether she had been drinking; she asserted she had not. After having her exit the car, the officer asked her to submit to a field sobriety test. Petitioner refused, sat down on the curb, and attempted to enter into a conversation with the officer about his family, telling him she was an old family friend. When he refused to sustain the conversation, petitioner became agitated and accused him of arresting her because of a personal grievance against her ex-husband. The officer summoned a second officer for assistance. After a field sobriety test showed petitioner's lack of balance and dexterity, the second officer arrested her. He administered a breath test, which disclosed that her blood-alcohol level was between 0.16 and 0.17 percent.

Petitioner was charged with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)), driving with a blood-alcohol level exceeding 0.10

---

[1] Petitioner testified she had gone to the bar to meet several friends for a dinner party. Arriving late and discovering that the group had already entered the restaurant section of the establishment, petitioner decided not to join them. Instead, she had five drinks by herself in the lounge over a "short period of time," then left for home.

percent (Veh. Code, § 23152, former subd. (b)), and violating the conditions of her probation (Pen. Code, § 1203.2). She entered pleas of nolo contendere to the second charge and the probation violation; the first charge was dismissed. The court sentenced her to 30 days in jail for the probation violation, consecutive to 10 days for the Vehicle Code conviction. In addition, the court fined her $900, placed her on probation for an additional 36 months, and required her to enroll in a more intensive alcohol abuse program.

## II. Disciplinary Proceedings

Following petitioner's second conviction, we referred this matter to the State Bar for a hearing and recommendation as to whether the facts and circumstances surrounding the convictions involved moral turpitude or other misconduct warranting discipline and, if so, what discipline should be imposed. One of the arresting police officers testified at the hearing. The State Bar offered no other witnesses but introduced police reports and several other exhibits relating to the two convictions. Petitioner called eight witnesses, and several others wrote letters on her behalf. Each stated that petitioner possessed good moral character, and that her use of alcohol was not a recurring problem or likely to interfere with her practice of law. Two of these witnesses also testified that she enjoyed an excellent reputation in the local legal community and engaged in substantial pro bono and community activities.

The hearing panel found petitioner (1) had no prior disciplinary or arrest record (other than the 1984 incident); (2) had engaged in extensive community service; (3) had not abused alcohol in a manner interfering with the practice of law; (4) had complied with all terms of her probation since the second conviction in 1986; and (5) was a competent attorney of good moral character. Concluding that the facts and circumstances surrounding petitioner's 1986 conviction involved neither moral turpitude nor other misconduct warranting discipline, the hearing panel recommended the proceedings be dismissed.

The review department disagreed. By an 11-to-4 vote, the review department concluded that although petitioner's actions did not involve moral turpitude, they did involve other misconduct warranting discipline. First, it found that "a second offense of alcohol-related driving, occurring at a time while still on probation from a prior offense, is a serious violation of law with potentially dangerous physical consequences to both [petitioner] and third parties" and therefore warranted professional discipline. Second, it concluded that petitioner's evidence of a lack of recurrent alcohol abuse was "strongly impeached by the fact of two offenses within a period of 31

months." Accordingly, the department recommended that petitioner be publicly reproved and placed on probation for three years, during which time she would be required, inter alia, to abstain from the use of intoxicants and submit to evaluation of her suitability for enrollment in the State Bar Program on Alcohol Abuse.

## III. Discussion

Petitioner raises three issues. First, she contends that because her actions involve neither moral turpitude (see Bus. & Prof. Code, §§ 6101, 6106; all subsequent statutory references are to this code unless otherwise indicated) nor violation of her professional oath and duties (§ 6103), and because they do not relate to her practice of law, they do not warrant professional discipline. (Cf. *Maltaman* v. *State Bar* (1987) 43 Cal.3d 924 [239 Cal.Rptr. 687, 741 P.2d 185].) Second, she argues that imposition of discipline on general standards such as "other misconduct warranting discipline," rather than on the basis of a specific statutory authorization, violates due process because it provides no advance notice of the grounds on which professional discipline may be imposed. Finally, she contends that even if her actions warrant discipline, the probation and conditions thereof recommended by the review department are excessive and invade her constitutional right to privacy.

### A. Standards for Levying Discipline

Our concerns in assessing whether an attorney's actions warrant discipline are to protect the public, the courts, and the integrity of the legal profession, and to preserve public trust in the profession. (*Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 948 [232 Cal.Rptr. 152, 728 P.2d 222]; *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 133 [207 Cal.Rptr. 302, 688 P.2d 911]; Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.3.) We exercise independent judgment in determining whether discipline is warranted, but attach significant weight to the recommendation of the State Bar Court. (*Tarver, supra,* 37 Cal.3d at p. 133.) Petitioner bears the burden of showing the recommendation is unlawful or erroneous. (§ 6083, subd. (c); *Weber* v. *State Bar* (1988) 47 Cal.3d 492, 501 [253 Cal.Rptr. 573, 764 P.2d 701]; *In re Vaughn* (1985) 38 Cal.3d 614, 618 [213 Cal.Rptr. 583, 698 P.2d 651].)

At the outset we note the statutory grounds relevant to our inquiry. Section 6101 authorizes discipline for an attorney's "conviction of a felony or misdemeanor, involving moral turpitude." In addition, under section 6106, an attorney may be disciplined for commission of any act, whether or not criminal, if it involves "moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or

otherwise . . . ."[2] Both statutes thus provide for discipline only if the act or offense involves moral turpitude.

The initial question then is whether petitioner's criminal conduct, or the circumstances surrounding it, involved moral turpitude. Conviction of some crimes establishes moral turpitude per se. These include crimes involving an intent to defraud as well as extremely repugnant crimes such as murder. (*In re Fahey* (1973) 8 Cal.3d 842, 849 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465].) Convictions for drunk driving,[3] however, do not per se establish moral turpitude. Therefore if moral turpitude exists in this case, it must be based on the particular circumstances surrounding the convictions. The review department found petitioner's criminal conduct did not involve moral turpitude. Although we must exercise our independent judgment on the question of moral turpitude (*In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97]), we find no reason to depart from the review department's conclusion.

Our inquiry into the possible grounds for discipline does not end with the foregoing statutory language. Although the review department found petitioner's conduct did not involve moral turpitude, it concluded the conduct constituted "other misconduct warranting discipline." The "other misconduct warranting discipline" standard permits discipline of attorneys for misconduct not amounting to moral turpitude as an exercise of our inherent power to control the practice of law to protect the profession and the public. (See, e.g., *In re Carr* (1988) 46 Cal.3d 1089 [252 Cal.Rptr. 24, 761 P.2d 1011]; *In re Rohan* (1978) 21 Cal.3d 195, 203 [145 Cal.Rptr. 855, 578 P.2d 102] [lead opn. by Clark, J.].[4] Petitioner contends that statutes which specifically address particular misconduct (e.g., conviction of crimes) preempt our inherent power to impose discipline when such misconduct falls below the disciplinary thresholds provided in the statutes.

---

[2] Section 6103, proscribing "any violation of the oath taken [by an attorney], or of his duties as an attorney," is not at issue here. Because the section does not define any duties or obligations of an attorney, petitioner does not violate this section even if she violates duties or obligations defined elsewhere. (*Baker* v. *State Bar*, (1989) 49 Cal.3d 804, 815 [263 Cal.Rptr. 798, 781 P.2d 1344].) Moreover, petitioner's conduct does not fall within section 6103's proscription of a "violation of an order of the court . . . *connected with or in the course of his profession*." (Italics added.)

[3] The term "drunk driving" is used in this opinion according to its colloquial meaning, which includes convictions for both driving under the influence and driving with a blood-alcohol level in excess of the legal limit. Both of petitioner's convictions were for driving with a blood-alcohol content in excess of the legal limit.

[4] In *Rohan*, a divided opinion, we nevertheless unanimously concluded that a willful failure to file federal income tax returns warranted discipline even in the absence of moral turpitude, apparently on the basis of our inherent power to discipline attorneys for "other misconduct warranting discipline." Neither a majority nor a plurality of the court, however, was able to agree on the reasoning supporting this result. Three separate opinions were filed in *Rohan*, each signed by two justices.

We have rejected this contention and levied discipline based on the "other misconduct warranting discipline" standard for criminal conduct not involving moral turpitude. (See, e.g., *In re Morales* (1983) 35 Cal.3d 1 [196 Cal.Rptr. 353, 671 P.2d 857] [failure to pay payroll taxes and unemployment insurance contributions as employer]; *In re Rohan, supra,* 21 Cal.3d 195 [wilful failure to file federal income tax returns].) Moreover, section 6100 explicitly states that "nothing in this article limits the inherent power of the Supreme Court to discipline, including to summarily disbar, any attorney."

Although we have rejected the argument that our inherent power to discipline is limited by the statutes proscribing certain misconduct, we have disagreed about the application of the "other misconduct warranting discipline" standard. The disagreement has focused on whether application of the "other misconduct warranting discipline" standard requires a nexus between the attorney's misconduct and the practice of law. (Compare *In re Rohan, supra,* 21 Cal.3d at p. 204 [lead opn. by Clark, J.], with *id.* at p. 205 [opn. by Tobriner, J.].) This issue, however, need not be resolved here where there exists a nexus between petitioner's misconduct and her fitness to practice law.

This nexus is established in two ways. First, petitioner's most recent conviction was in violation of a court order directed specifically at petitioner following her first conviction. Petitioner demonstrated a complete disregard for the conditions of her probation, the law, and the safety of the public. (See *In re Alkow* (1966) 64 Cal.2d 838 [51 Cal.Rptr. 912, 415 P.2d 800, 21 A.L.R.3d 882].) ■ Disobedience of a court order, whether as a legal representative or as a party, demonstrates a lapse of character and a disrespect for the legal system that directly relate to an attorney's fitness to practice law and serve as an officer of the court. (See *Maltaman* v. *State Bar, supra,* 43 Cal.3d at p. 951.)

■ Second, petitioner's two convictions, and the circumstances surrounding them as described above, are indications of a problem of alcohol abuse. The review department concluded that petitioner's contrary evidence was "strongly impeached" by petitioner's two drunk driving convictions occurring within a short period of time. We agree. Her repeated criminal conduct, and the circumstances surrounding it, are indications of alcohol abuse that is adversely affecting petitioner's private life. We cannot and should not sit back and wait until petitioner's alcohol abuse problem begins to affect her practice of law. (See *In re Hickey* (1990) 50 Cal.3d 571, 579 [268 Cal.Rptr. 170, 788 P.2d 684] [when attorney engages in violent criminal conduct as result of uncontrolled consumption of alcohol, we "need not wait until the attorney injures a client or neglects his legal duties" before

imposing discipline].) Although it is true that petitioner's misconduct caused no harm to her clients, this fact alone does not insulate her from discipline aimed at ensuring that her potentially harmful misconduct does not recur. ■ Lack of past or present adverse impact on an attorney's practice or clients is an appropriate consideration in assessing the amount of discipline warranted in a given case, but it does not preclude imposition of discipline as a threshold matter. (*Ibid.*)

■ We have previously ordered discipline based on two convictions of drunk driving, even when no moral turpitude was found. (See, e.g., *In re Carr, supra,* 46 Cal.3d 1089 [six months' actual suspension levied on attorney with prior disciplinary record for two convictions of drunk driving].) We agree with petitioner that it would be unreasonable to hold attorneys to such a high standard of conduct that every violation of law, however minor, would constitute a ground for professional discipline. But that is not the case here. Petitioner's behavior evidences both a lack of respect for the legal system and an alcohol abuse problem. Both problems, if not checked, may spill over into petitioner's professional practice and adversely affect her representation of clients and her practice of law. Our task in disciplinary cases is preventative, protective and remedial, not punitive. (See *Palomo* v. *State Bar* (1984) 36 Cal.3d 785, 797 [205 Cal.Rptr. 834, 685 P.2d 1185] [emotional disability, although lessening moral culpability of misconduct, does not immunize attorney from discipline necessary to protect public].) Keeping this in mind, it is our responsibility to impose a discipline that will protect the public from this potential harm.

### B. Constitutionality of the Standard

■ Petitioner contends the "other misconduct warranting discipline" standard under which the review department recommended discipline is unconstitutionally vague. Her view finds some support in our earlier opinion in *In re Fahey, supra,* 8 Cal.3d at page 853, in which we held that "[o]ffenses that do not involve moral turpitude or affect professional performance should not be a basis for professional discipline simply because they fall short of the highest standards of professional ethics or may in some way impair the public image of the profession." (Cf. *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 224-226 [82 Cal.Rptr. 175, 461 P.2d 375] [schoolteacher discipline case in which we declined to apply "moral turpitude" standard without regard to fitness to teach, given potential vagueness problems].)

It is true, of course, that if a disciplinary standard is so vague that no reasonable consensus may be formed as to its proper meaning, its application is constitutionally suspect. (*Morrison* v. *State Board of Education,*

*supra*, 1 Cal.3d at pp. 231-233.) We do not believe, however, that our application of the challenged standard to the facts presented here encounters constitutional difficulties. It is well established that "one to whose conduct a statute clearly applies may not successfully challenge it for vagueness." (See *Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 764 [221 Cal.Rptr. 779, 710 P.2d 845], quoting *Parker* v. *Levy* (1973) 417 U.S. 733, 756 [41 L.Ed.2d 439, 457-458, 94 S.Ct. 2547].) Thus, even if a disciplinary standard is so broad that people "of common intelligence must necessarily guess at its meaning and differ as to its application" (*Connally* v. *General Constr. Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126]), this fact alone is insufficient to sustain a vagueness challenge where the misconduct at issue is clearly within the scope of the disciplinary standard.

We think it clear that attorneys should realize that repeated failure to conform their conduct to the requirements of the criminal law and court orders specially imposed on them may call into question their integrity as officers of the court and their fitness to represent clients. Given our inherent power to control the practice of law in order to protect the profession and the public, attorneys must understand that such misconduct may therefore warrant professional discipline. Such a standard does not hold attorneys to an arbitrarily high moral code of conduct. It requires nothing more than that attorneys conform to the requirements of the law in the manner of all other persons. For these reasons, the "other misconduct warranting discipline" standard is not impermissibly vague as applied to petitioner's criminal conduct.

## C. Propriety of the Discipline

As in the threshold determination of whether petitioner's conduct warrants discipline, protection of the public, the courts, and the integrity of the legal profession guides our imposition of discipline. (*Snyder* v. *State Bar* (1990) 49 Cal.3d 1302, 1307 [265 Cal.Rptr. 429, 783 P.2d 1146].) In this respect, we accord great weight to the recommendation of the review department. Petitioner bears the burden of proving the recommendation erroneous or unlawful. (*Ibid.*)

Petitioner argues that because the State Bar failed to establish that her abuse of alcohol affected her practice of law, the discipline recommended is unnecessary to protect the public or her clients from a threat of future misconduct. We disagree. As stated above, petitioner's convictions and the circumstances surrounding them indicate a problem of alcohol abuse. (See *ante*, pp. 495-496.) Moreover, as noted, we cannot wait until the problem begins to affect her practice of law when given that such spillover effects are likely to occur if the problem goes unchecked. (*Ibid.*)

Petitioner also contends that because alcoholism is widely regarded as a disease, it is unfair and irrational to impose discipline on the basis of acts resulting therefrom. Petitioner's own factual and legal assertions, however, do not support this contention. ■ Generally, we may regard addictive alcoholism as a mitigating factor if it is causally related to the misconduct at issue and the attorney has shown sustained rehabilitative efforts. (*In re Billings* (1990) 50 Cal.3d 358, 367 [267 Cal.Rptr. 319, 787 P.2d 617].) ■ Petitioner, however, made no attempt to show such rehabilitative efforts. In fact, she maintains that she has no alcohol abuse problem. Rehabilitative efforts presuppose admission of the problem. Petitioner's failure to recognize the problem, its effect on her private life, and its potential effect on her professional practice, heighten the need for discipline.

The Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) serve as guidelines for imposition of discipline. Under standard 3.4, the discipline suggested for an attorney's conviction of a crime not involving moral turpitude but involving "other misconduct warranting discipline" is that discipline "appropriate to the nature and extent of the misconduct."

Petitioner's convictions and her violation of the court order did not cause specific harm to the public or the courts. In addition, the review department found several significant mitigating factors (e.g., lack of a prior disciplinary record, extensive involvement in community service, and cooperation during disciplinary proceedings). For these reasons, relatively minimal discipline is warranted in this case, even though petitioner's crimes were serious and involved a threat of harm to the public. (Compare *In re Hickey, supra*, 50 Cal.3d 571 [30-day actual suspension following nolo contendere plea to charge of carrying concealed weapon and repeated incidents of violence related to attorney's alcohol abuse], with *In re Morales, supra*, 35 Cal.3d 1 [18-month disciplinary probation following conviction of misdemeanor tax and unemployment insurance reporting offenses].) Public reproval and referral to the State Bar Program on Alcohol Abuse are sufficient to protect the public from the threat of future professional misconduct.

Petitioner argues that imposing discipline consisting, in part, of conditions bearing on her nonprofessional life is fundamentally unfair and therefore violates her constitutional rights to due process and privacy. We disagree. Due process and privacy do not bar the imposition of discipline tailored to eliminate the source of petitioner's misconduct.

We reject petitioner's contention that referral to the State Bar alcohol abuse program is unsupported by the evidence and unnecessary to protect the public. As the State Bar points out, the first step after referral is evalu-

ation and screening for suitability of enrollment in the program. We agree with the review department that two drunk driving convictions, the second involving a violation of a court order based on the first, warrant this measure even absent an evidentiary finding that petitioner in fact suffers from such a problem. However, we agree with petitioner that the requirement that petitioner abstain from the use of intoxicants for three years is not necessary to protect the public. Referral to the alcohol abuse program on condition that she comply with all the terms of such program is sufficient to protect the public and petitioner's clients from the threat of future misconduct related to her drinking. Failure by petitioner to comply in full with this condition or any other condition of her disciplinary probation may constitute cause for a separate proceeding for breach of rule 1-110, Rules of Professional Conduct. (See Cal. Rules of Court, rule 956(b).)

## IV. DISPOSITION

For the foregoing reasons, we order that petitioner Anna Lou Kelley be publicly reproved and placed on disciplinary probation for three years subject to all the conditions set forth by the review department in its recommendation, with the exception of the requirement that petitioner abstain from the use of intoxicants during such period. This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)

**MOSK, J.**—I concur in the disposition.

As has become our practice, we referred this matter to the State Bar for a recommendation whether petitioner's conviction of driving with an excessive blood-alcohol level while on probation for the same offense (Veh. Code, § 23152, subd. (b)) involved either moral turpitude or "other misconduct warranting discipline." No majority opinion of this court, however, has ever refined the latter imprecise phrase or declared a standard for its application. Yet as the present case shows, there is need of such a standard: lawyers need to know what conduct other than moral turpitude may jeopardize their license to practice; the bar authorities need the same information to administer the disciplinary program; and we need such a standard to reach some degree of consistency and fairness in our decisions imposing discipline on this facially amorphous ground.

Regrettably, the majority opinion misses an opportunity to provide such a standard. Although it determines that a nexus, however tenuous, exists between petitioner's misconduct and her fitness to practice law, it expressly declines to resolve the issue whether such a nexus must be shown before the "other conduct warranting discipline" category is applied.

I would answer the question in the affirmative, and would limit the application of the "other misconduct warranting discipline" category to misconduct that impairs or is likely to impair the attorney's performance of his or her professional duties. I believe this rule is most consonant with the role of this court in the disciplinary process: i.e., to protect the public from the negligent or improper practice of law, to preserve confidence in the profession, and to maintain high professional standards. (See, e.g., *Mepham v. State Bar* (1986) 42 Cal.3d 943, 948 [232 Cal.Rptr. 152, 728 P.2d 222].) If the misconduct does not meet this standard and the attorney is not otherwise subject to discipline on moral turpitude or other statutory grounds, we should leave the matter to the sanction of the criminal law or public opprobrium.

Broussard, J., concurred.

**PANELLI, J.**—I respectfully dissent.

I agree with Justice Mosk that before we impose discipline for an attorney's misconduct, a nexus must exist between the attorney's misconduct and the attorney's fitness to practice law. I further agree with Justice Mosk that this court must refine the imprecise phrase, "other misconduct warranting discipline." The majority opinion fails to provide a standard for imposing discipline under this phrase and declines to resolve the conflict in prior attempts to define the phrase.

I believe that the standard should be limited to attorney misconduct which impairs the attorney's performance of his or her duties. In the present case, a nexus between petitioner's misconduct and her performance of her duties is absent. Therefore, I would reverse the discipline imposed by the review department, and like the hearing panel, dismiss the proceeding.

The majority imposes discipline on petitioner for her law violations and "the *indications* of a problem of alcohol abuse" (maj. opn., *ante*, p. 495, italics added) which, as the majority admits, has not affected her practice of law. In imposing discipline for conduct which may affect petitioner's future performance of her duties, although it has not yet affected her performance, the majority embarks on a dangerous journey.

Petitioner's violations of our drinking and driving laws are obviously serious matters which pose threats to public safety. However, the Constitution vests both the duty and the power to protect society against threats to public safety in the Legislature, which enacts criminal laws of this state, and in the executive branch, which enforces those laws—not in the judicial branch or its administrative arm, the State Bar.

I share the majority's unstated but obvious concern for the toll taken by drunken driving on our highways. However, that is a matter for the criminal law. In the present case, the criminal law has run its course and punished this petitioner. We simply have no right to declare ourselves higher guardians of the "public safety" and increase the criminal law's punishment for the sole reason that this particular driver happens to be a member of the bar.

As indicated, the majority finds support for imposing discipline on the "indications of a problem of alcohol abuse." To my knowledge, this is the first time we have imposed discipline, as a prophylactic measure, for potential problems with alcohol which have not affected the attorney's practice of law. Here, we do not see the usual misconduct associated with alcohol abuse. In fact, the hearing panel specifically found that petitioner's use of alcohol "has not interfered with [her] practice of law," and that she is "a competent attorney with good relationships with clients, other attorneys, and judges in her community." The review department made no finding to the contrary, and specifically found that "[petitioner's] violation . . . did not involve the practice of law."

To discipline this attorney for conduct that may in the future impair her practice of law, without disciplining all attorneys for the same reason, presents insurmountable problems of consistency and fairness. Because petitioner's conduct thus neither involved moral turpitude nor in any way impaired her performance as an attorney, it should not be the subject of professional discipline by this court.

I would therefore dismiss this proceeding.